UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BOBBY D. BIGGS,

     Petitioner,

v.                                                                        Case No. 3:18cv2087-LC-HTC

MARK S. INCH,

     Respondent.

_____/

ORDER and REPORT AND RECOMMENDATION

Petitioner, Bobby D. Biggs ("Biggs"), proceeding *pro se*, filed a petition under 28 U.S.C. § 2254, ECF Doc. 1, challenging his conviction in the circuit court of Santa Rosa, Florida.  The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After considering the petition, the Secretary's response (ECF Doc. 15), and Biggs's reply (ECF Doc. 21), the undersigned recommends the petition be DENIED without an evidentiary hearing.

I.    **BACKGROUND**

    A.    **Offense and Conviction**

Biggs was convicted of five counts of obtaining prescription drugs by fraud and two counts of trafficking in illegal drugs based on hydrocodone and carisoprodol (also known as "Soma") obtained in his name at a local pharmacy.  ECF Doc. 15-1 at 119.  Also implicated in the scheme was Biggs's wife, Cynthia Biggs, who was

the receptionist and office clerk for Dr. Angeli Saith, from whose office the fraudulent prescriptions for Bobby Biggs originated.

The investigation began when a pharmacy employee attempted to fill the prescription of one of Cynthia Biggs's coworkers, Teresa Felts, and received a "high dose alert" from the insurance company. ECF Doc. 15-1 at 299-300. The prescription purported to be from Dr. Saith's office, so the pharmacy employee called the doctor's office and was told by Dr. Saith the doctor had not authorized the prescription. *Id.* at 300. The employee also discovered in that conversation other people – Cynthia Biggs, Bobby Biggs, and their daughter Ashley – also had prescriptions with the pharmacy that Dr. Saith had not authorized. *Id.* at 300-01. The pharmacy employee contacted the police, who began an investigation.

The pharmacy gave law enforcement – without any subpoena, warrant or notice to Biggs -- pharmacy records relating to the prescriptions which were filled in Biggs's name. *Id.* at 303-04. These included signature logs that the employee testified Biggs signed when he picked up many of the prescriptions at the pharmacy. *Id.* at 306-09 (employee's trial testimony) & *Id.* at 160-68 (trial exhibits).

After interviewing Teresa Felts, Cynthia Biggs and Dr. Saith at the doctor's office, Detective Tara Milstead then met with Dr. Saith at her home (since Felts and

Cynthia Biggs worked at the office) to interview her about potential forged prescriptions. ECF Doc. 15-2 at 17.

During the interview, Detective Milstead and Detective Blake Weekley asked Dr. Saith if she had authorized specific prescriptions in Bobby Biggs's name. After consulting Biggs's medical folder, which Dr. Saith had brought to her home, she answered she had not authorized the prescriptions. ECF Doc. 15-3 at 22-23 (Weekley's testimony at suppression hearing); ECF Doc 15-3 at 195-96 (deposition of Dr. Saith). Detective Weekley testified the doctor did not show the detectives the records or give them the records, *id.*, and Dr. Saith provided similar testimony during her deposition, ECF Doc. 15-3 at 196-98. The detectives had Doctor Saith fill out a forged prescription affidavit swearing that she had not authorized fourteen (14) prescriptions that had been filled for Biggs. *Id.* at 23; ECF Doc. 15-1 at 169-70 (trial exhibit of affidavit). Dr. Saith also testified at trial she had not authorized the fourteen (14) prescriptions. ECF Doc. 15-2 at 30-31.

Biggs was eventually charged on December 1, 2006, with seven (7) counts, including two trafficking charges that carried 25-year mandatory minimum sentences. ECF Doc. 15-1 at 54. In January 2008, Biggs filed a motion to suppress the evidence that flowed from law enforcement's receipt of the pharmacy records and from the lack-of-a-prescription information given by Dr. Saith. ECF Doc. 15-1

at 64.  The court held a hearing on January 31, 2008, and denied the motion.  ECF Doc. 15-3 at 16; ECF Doc. 15-1 at 70 (written opinion).

Meanwhile, based on plea negotiations, the state announced a *nolle prosequi* on the trafficking charges on March 4, 2008 and, on August 6, 2008, and offered Biggs a probation-only sentence of 24 months on the five remaining charges.  ECF Doc. 15-5 at 186-89.  Biggs rejected the offer in writing on February 2, 2009.  *Id.* Later, at an April 13, 2009, hearing, the prosecutor informed the court and defense counsel (Biggs was not present) the Information "very well probably will be amended" to include the more-serious trafficking charges (that had been nolle prossed).  ECF Doc. 15-2 at 291.  On April 23, 2009, the State filed an Amended Information, which included the two trafficking charges.  ECF Doc. 15-1 at 107.  On July 8, 2009, after the jury was selected, but before the trial began, the prosecutor gave Biggs one last chance to accept a sentence of five years' incarceration.  Biggs rejected the offer.

Biggs testified at trial he had no knowledge the drugs he received had not been prescribed to him.  He claimed he initially visited Dr. Saith, and she had treated him for back pain.  ECF Doc. 15-2 at 87.  He stated she initially prescribed him Lortab (a type of hydrocodone) and Soma.  *Id.* at 88.  He also testified Dr. Saith's office told him they had called his later prescription into the pharmacy and he needed to go

there to pick it up. *Id.* at 91. He testified he had no knowledge the drugs he picked up were not prescribed or authorized by the doctor. *Id.*

Dr. Saith testified at trial, however, that she prescribed Biggs Lortab in the first visit, but not Soma. ECF Doc. 15-2 at 26-27. Additionally, she testified she did not allow anyone in the office to call in narcotic prescriptions like Soma or hydrocodone and she would never authorize refills for narcotics without an examination. ECF Doc. 15-2 at 27-28.

Biggs was convicted on all seven (7) counts. ECF Doc. 15-1 at 119. He was sentenced to 5 years on each of the first five (5) counts, and to the 25-year mandatory minimum sentence on each of the two (2) trafficking counts, *id.* at 131-32, with all counts running concurrently. *Id.* at 133.

### B.    Postconviction Procedural History and Timeliness

As an initial matter the undersigned finds Biggs's petition to be untimely filed. The Respondent, however, fails to challenge the timeliness of the petition. This failure appears to be based on a miscalculation of the tolling period.

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas relief must be filed within one-year limitations of certain "trigger" dates. 28 U.S.C. § 2244(d)(1). For purposes of Biggs's petition, the applicable trigger date is "the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review".

28 U.S.C. § 2244(d)(1)(A). Additionally, the limitations period is tolled for the time

during which any "properly filed" postconviction motion is pending in state court.

*Id.* § 2244(d)(2).

Biggs appealed his conviction on September 14, 2009 (ECF Doc. 15-1 at 153),

and the First District Court of Appeal ("First DCA") affirmed without written

opinion on August 9, 2012 and denied rehearing on September 7, 2012. *Biggs v.

State*, 96 So. 3d 883 (Fla. 1st DCA 2012); Case No.: 1D09-4576. Therefore, Biggs'

judgment of conviction became final ninety (90) days later, December 6, 2012. *See

Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002).

"Under the Supreme Court's rules, the 90-day period for filing a petition for

certiorari begins to run from the date of entry of the judgment; and in the event a

timely petition for rehearing is filed and denied, the period begins to run from the

date of the denial. Sup. Ct. R. 13.3." *Lowe v. Fla. Dep't of Corr.*, 679 F. App'x 756,

757–58 (11th Cir. 2017) (citing U.S. Supreme Court Rule 13.3 ("if a petition for

rehearing is timely filed in the lower court by any party, or if the lower court

appropriately entertains an untimely petition for rehearing or sua sponte considers

rehearing, the time to file the petition for a writ of certiorari for all parties (whether

or not they requested rehearing or joined in the petition for rehearing) runs from the

date of the denial of rehearing or, if rehearing is granted, the subsequent entry of

judgment.")).

The Secretary, however, incorrectly states the conviction became final thirty

(30) days after the September 7, 2012 order, citing *Israel v. Sec'y, Fla. Dep't of Corr.*,

2018 WL 4963689 at *2 n.4 (M.D. Fla. Oct. 15, 2018).[1] *Israel* is inapposite because

the appellate court in that case filed a written opinion affirming the conviction, which

entitled Israel to discretionary review in the Florida Supreme Court, which he

declined to exercise.  In such a case, the conviction would become final thirty (30)

days after the time to seek discretionary review expired.[2]

In Biggs's case, however, the First DCA did not file a written opinion, and so

he was not entitled to discretionary review in the Florida Supreme Court.  *See The*

*Fla. Star v. B.J.F.*, 530 So. 2d 286, 288 n.3 (Fla. 1988) (holding the Florida Supreme

Court "does not have subject-matter jurisdiction over a district court [of appeals]

opinion that fails to expressly address a question of law, such as opinions issued

---

[1] This error, however, does not matter because it would have shortened rather than lengthened Biggs' time to file this petition.

[2] *Dailey v. Crews*, No. 3:13CV148-WS/EMT, 2014 WL 2158428, at *4 (N.D. Fla. May 23, 2014) (citing *Coulliette v. Sec'y, Dep't of Corr.*, No. 5:12cv355/MW/GRJ, 2014 WL 518936, at *2 (N.D.Fla. Feb.10, 2014) (unpublished) ("Because the First DCA issued a written opinion, Petitioner could have sought discretionary review in the Florida Supreme Court, but he did not do so.  Accordingly, Petitioner's conviction became final on April 2, 2007, 30 days after the First DCA denied his motion for rehearing, when the time to seek discretionary review expired.")).

without opinion or citation.  Thus, a district court decision rendered without opinion or citation constitutes a decision from the highest state court empowered to hear the cause, and appeal may be taken directly to the United States Supreme Court.") (citing *Jollie v. State,* 405 So.2d 418, 420 (Fla.1981)).

In the meantime, on November 19, 2012, Biggs filed a 3.800 motion, which, after several attempted amendments and an appeal[3], remained pending until the First DCA issued its mandate on August 27, 2013.   ECF Doc. 15-4 at 183; Case No.: in Case No.: 1D13-1181.  Because the 3.800 motion tolled Biggs' AEDPA clock, the clock did not begin to run until the day after the mandate was issued, August 28, 2013.

The clock ran from August 28, 2013, until November 25, 2013, for a period of 89 days,[4] when it was tolled again by the filing of a petition for writ of habeas corpus in circuit court.  ECF Doc. 15-5 at 49.  That motion, as amended twice, was denied by the circuit court on March 1, 2016 (ECF Doc. 15-5 at 215), appealed, and

---

[3] By an order on March 19, 2013, the First DCA in 1D13-1181 construed Petitioner's petition for writ of certiorari filed with it on March 3, 2013 to be an appeal of the denial of the 3.800 motion. Therefore, the 3.800 motion should be considered to have remained pending on appeal until the resolution of 1D13-1181 on August 27, 2013.

[4] Although the Secretary agrees the limitations period ran from August 28, 2013 to November 25, 2013, the Secretary makes a typographical error and calculates the time elapsed as 29, rather than 89, days.  ECF Doc. 15 at 7.

remained pending until the First DCA, in Case No.: 1D16-1447, issued its mandate affirming the denial without written opinion on July 31, 2017. *Biggs v. State*, 226 So. 3d 814 (Fla. 1ˢᵗ DCA 2017).[5]

Thus, the AEDPA clock began to run again on August 1, 2017. In the Secretary's calculation of the AEDPA clock, however, the Secretary continues to toll the AEDPA clock by erroneously treating First DCA Case No.: 1D18-0837 as an appeal of the 3.850 motion. That case, however, filed directly with the First DCA on February 21, 2018 (docketed February 27, 2018), was not an appeal of the 3.850 motion and was, instead, Biggs's "Second and Successive Petition for Writ of Habeas Corpus." ECF Doc. 15-4 at 247. The First DCA construed the petition as one alleging ineffective assistance of appellate counsel and dismissed it as untimely

---

[5] The Secretary erroneously concludes the circuit court's dismissal of the original 3.850 motion as facially insufficient on December 27, 2013 (ECF Doc. 15-5 at 68) interrupted the tolling of the AEDPA deadline. This is not so because the dismissal was without prejudice to filing an amended motion. "[F]or the purposes of tolling under 28 U.S.C. § 2244(d)(2), a petitioner's Rule 3.850 motion is 'pending' until it is denied with prejudice." *Hall v. Sec'y, Dep't of Corr.*, 921 F.3d 983, 990 (11th Cir. 2019). Thus, "when a postconviction motion is stricken with leave to amend, the amended motion relates back to the date of the original filing." *Id.* Therefore, none of the amendments leading up to and including the second amended motion for postconviction relief (docketed in circuit court on September 25, 2015) interrupted the tolling. Instead, the second amended motion related back to the date of the November 25, 2013 original motion for postconviction relief under Rule 3.850.

under Fla. R. App. P. 9.141(d)(5).  *Biggs v. State*, 241 So. 3d 242 (Fla. 1st DCA 2018).

A review of the state court dockets confirm that Biggs did not have any post-conviction motions or appeals pending between August 1, 2017 and February 21, 2018.  See online docket sheet from Santa Rosa case number 2006-CF-1725 and online search results for First DCA cases for Bobby Biggs, each docketed as exhibits to this Report.[6]

Although the filing of that state habeas also tolled the AEDPA clock, by the time that petition was filed, another 204 days had run on the AEDPA clock, for a total of 293 days.  The state habeas petition in Case No.: 1D18-0837 remained pending until May 3, 2018, when the First DCA, which had previously dismissed his petition as untimely, denied his motion for rehearing.  *Biggs v. State*, 241 So. 3d 242 (Fla. Dist. Ct. App. 2018).  Thus, the AEDPA clock started running again on May 4, 2018.

---

[6] A federal court may properly take judicial notice of state court dockets. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir.), *cert. denied sub nom. Paez v. Inch*, 141 S. Ct. 309 (2020); Fed. R. Evid. 201(b)(2).  Thus, as an initial matter, the undersigned will take judicial notice of Petitioner's state court records.  Additionally, the Court will instruct the clerk to post as exhibit to this Report and Recommendation the state court online docket materials which the undersigned considered in recommending this dismissal.  *Paez*, 947 F.3d at 649 ("We think the best practice would be to include copies of any judicially noticed records as part of the Order that relies upon them, so as to ensure the inmate receives them.").

Biggs did not have any application for postconviction relief pending from May 4, 2018, for another 124 days, until September 5, 2018, when Biggs delivered the instant federal petition to prison mail officials. ECF Doc. 1 at 22. Therefore, because 423 days had run under the AEDPA when the instant petition was filed, the petition is untimely. The Secretary's calculation of the timeliness fails to account for the 204 days which ran between July 31, 2017 and February 21, 2018, and, when combined with the other errors discussed above, resulted in the Secretary concluding the petition was timely.

Despite the Secretary's error, the Court may nonetheless dismiss the petition *sua sponte* as untimely. In *Day v. McDonough*, 547 U.S. 198, 204 (2006), the Supreme Court upheld a district court's *sua sponte* application of a timeliness bar to dismiss a petition. As the Secretary has done here, the respondent in *Day* conceded timeliness, stating, "[b]ased on these events, Respondent agrees the petition is timely; filed after 352 days of untolled time." *Id.* at 201. However, the respondent in *Day*, as here, had made a mistake.

The U.S. Supreme Court affirmed the *sua sponte* consideration of the timeliness issue by the district court because "the Magistrate Judge, instead of acting *sua sponte,* might simply have informed the State of its obvious computation error and entertained an amendment to the State's answer" under Rule 15 of the Rules of

Civil Procedure. *Day*, 547 U.S. at 208–09. Also, the Supreme Court noted that "if a judge does detect a clear computation error, no Rule, statute, or constitutional provision commands the judge to suppress that knowledge." *Id.* at 210. Finally, the *Day* Court found that "[f]rom all that appears in the record, there was merely an inadvertent error, a miscalculation that was plain under Circuit precedent, and no abuse of discretion in following this Court's lead in *Granberry* and *Caspari,* described *supra,* at 1682." *Id.*

This is not a case where the Secretary has expressed an intent or desire to waive a timeliness argument. *See Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966–67 (11th Cir. 2016). Instead, like the respondent in *Day,* the Secretary mistakenly concluded the petition was timely. The Respondent did not acknowledge an "arguable" defense and intentionally waive it. The Respondent did not "deliberately steer[] the District Court away from the question and towards the merits." *Id.* (quoting *Wood v. Milyard*, 566 U.S. 463, 474).

Thus, the undersigned finds the petition should be dismissed as untimely. Moreover, and as discussed below, even if timely filed, the undersigned finds the petition also fails on its merits.

## II.    DISCUSSION OF THE MERITS

### A.    Grounds One and Two: Trial Court Error in Denying Petitioner's Motion to Suppress His Medical and Pharmacy Records

Biggs argues his Fourth Amendment rights were violated when the trial court admitted evidence derived from his prescription records, which were seized by law enforcement without a warrant, and his medical records, which Dr. Saith consulted when she answered investigators' questions during an interview at her home.  ECF Doc. 1 at 4-6.  The Secretary argues these claims are not exhausted because Biggs relied on state medical record privacy statutes in State court and did not fairly present these claims as a federal claim.  Alternatively, the Secretary argues Biggs's Fourth Amendment claim is not subject to review by this Court because he had a full and fair opportunity to litigate the issue in state court.  *See Stone v. Powell*, 428 U.S. 465 (1976).  As explained below, the undersigned disagrees these grounds are unexhausted, but agrees they are barred from consideration by this Court under *Stone v. Powell*.

For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts."  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a

case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). "The Court's guidance in *Baldwin* 'must be applied with common sense and in light of the purpose underlying the exhaustion requirement' -- namely, giving the state courts 'a meaningful opportunity' to address the federal claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351-52 (11th Cir. 2012), *cert. denied*, 568 U.S. 1104 (2013) (quoting *McNair*, 416 F.3d at 1302).

Thus, a petitioner does not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state law claim." *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317 (11th Cir. 2004), *cert. denied*, 545 U.S. 1149 (2005). Rather, a petitioner must raise his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." *Id.* at 1344 (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)).

Biggs raised these claims as Fourth Amendment claims in a pretrial motion to suppress and on appeal. At the motion to suppress evidentiary hearing, his counsel argued to the state court that law enforcement's receipt of his prescription records from Adams Pharmacy and medical records from Dr. Saith violated his Fourth

Amendment rights against an illegal search and seizure.  ECF Doc. 15-3 at 64-65 (Biggs argued: "A motion to suppress requires that the defense raise the spect[re] of an unconstitutional search and seizure.  We have done that.  We have said there is a problem here.  There is enough for the Court to have a question about whether this was done in a constitutional manner.").

Additionally, Biggs raised these claims in his brief on direct appeal.  ECF Doc. 15-3 at 331.  He argued "caselaw from the U.S. Supreme Court has held to the contrary that, when a statute does not specify what the police may do in conducting the inspection, the court will turn to Fourth Amendment law to determine whether the police acted reasonably.  Under that analysis, the warrantless search and seizure of Appellant's pharmacy records was unreasonable." *Id.* at 331-32.  With regard to medical records, Biggs argued "[a] motion to suppress is a mixed question of law and fact, yoked to federal law", *id.* at 333, and cited *United State v. Leon*, 468 U.S. 897, 919 (1984) and *Michigan v. Tucker*, 417 U.S. 433 (1974), to show the good faith exception to the Fourth Amendment was inapplicable.  *Id.* at 340.  Thus, Biggs presented these claims as federal claims.

However, since Biggs was afforded a full and fair opportunity to litigate his Fourth Amendment claims in state court, he is precluded from litigating this issue in this Court.  When "the State has provided an opportunity for full and fair litigation

of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494 (footnotes omitted).

In his Reply, Biggs argues he either raised the Fourth Amendment argument in his state pleadings, or that any failure to do so was based on attorney ineffectiveness. ECF Doc. 21 at 2. He also argues the state court's denial of the claims was error and the medical and pharmacy records should have been suppressed under the Fourth Amendment. *Id.* at 4-5. These arguments ignore the fact that the claims are barred by *Stone v. Powell*. Thus, Biggs is not entitled to federal habeas relief on Grounds One and Two.

> **B.    Grounds Three and Four: Trial Court Error in Jury Instructions by Omitting Element That Petitioner Must Know of the Fraud or Forgery (Ground Three) or That a Valid Prescription Was a Complete Defense to the Trafficking Charge (Ground Four)**

Biggs argues the trial court violated his rights under the "5th, 6th, and 14th Amendments" by committing fundamental error in not instructing the jury it must find Petitioner knew the drugs were obtained by fraud or forgery, ECF Doc. 1 at 7, or a valid prescription was a defense, *id.* at 8. The Secretary argues Biggs failed to fairly present these arguments as federal constitutional arguments to the First DCA in his direct appeal and so failed to exhaust these grounds. ECF Doc. 15 at 15-16.

The Court agrees.  In his direct appeal, Biggs does not label these claims as federal claims and does not refer to the federal constitution or to federal case law. He cites merely Florida cases.  ECF Doc. 15-3 at 354-60.  Thus, he did not provide the First DCA an opportunity to apply controlling federal authorities to his case.  *See Kelley*, 377 F.3d at 1344; *Jossey v. Sec'y, Fla. Dep't of Corr.*, 2020 WL 2512819, at *4–5 (M.D. Fla. 2020) ("although Petitioner claimed fundamental error in the jury instructions, he did not raise a claim of constitutional deprivation under the Sixth or Fourteenth Amendments of the United States Constitution in the state court. . . . Petitioner failed to reference the federal source of law or any case deciding the claim on federal grounds, and he did not label the claim as federal. Thus, Petitioner never gave the state court a meaningful opportunity to address either a Sixth Amendment or Fourteenth Amendment federal constitutional claim.").

Also, it is clear from state law that any future attempts at exhaustion of this ground would be futile.  *See Moon v. Sec'y, Fla. Dep't of Corr.*, 2020 WL 6946440, at *6 (M.D. Fla. 2020) ("Because Florida law does not provide for successive direct appeals and requires ineffective assistance of appellate counsel be raised by habeas petition in the state court of appeal within two years after a conviction is final, *see* Fla. R. App. P. 9.141(d)(5), the federal claim is now procedurally defaulted.").  As such, Biggs has procedurally defaulted these grounds for relief.

Biggs does not argue cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of Grounds Three or Four. Accordingly, he is not entitled to federal review of these grounds.

### C.   Ground Five: Ineffective Assistance of Appellate Counsel ("IAAC") for Failing to Raise a Claim of Fundamental Error Based on Trial Court's Lack of Jurisdiction to Impose a Conviction and Sentence on Counts 6 and 7

Petitioner argues appellate counsel was ineffective for failing to argue on appeal the state court was without jurisdiction to convict him of the trafficking charges in Counts 6 and 7 because the State had announced a nolle prosequi of those charges on March 4, 2008 and "the State filed an amended information right before trial without formally recharging [or] rearraigning the Petitioner."  ECF Doc. 1 at 10.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), the courts utilize a two-prong test for determining whether counsel's performance is constitutionally ineffective.  First, a petitioner must show his counsel's performance was constitutionally deficient.  Second, petitioner must show the deficient performance prejudiced him.  *See id.* at 687.  Also, counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.* at 690.  The deficient performance prejudiced the

defendant only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome." *Id.* at 694.

To prevail on a claim of ineffective assistance of counsel, both parts of the *Strickland* test must be satisfied. *Bester v. Warden, Att'y Gen. of the State of Ala.*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). However, a court need only address one prong, and if it is found unsatisfied, the analysis ends. *Id.*

The Secretary admits Biggs exhausted this claim by raising it in his petition asserting IAAC filed with the First DCA on August 8, 2014. ECF Doc. 15 at 17 (referring to Petition at ECF Doc. 15-4 at 190). The First DCA denied that petition without written opinion, ECF Doc. 15-4 at 240; thus, there is no state court opinion providing a written explanation of the holding. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Here, such a reasonable basis exists because the State in Biggs's case did, in fact, formally recharge him. In his IAAC petition before the First DCA, Biggs relied upon *Sadler v. State*, 949 So. 2d 303 (Fla. 5th DCA 2007) for the proposition that "[i]n the absence of an indictment or information formally charging [a defendant]

with a crime at the time the jury was sworn and empaneled, the trial court had no jurisdiction to try [that defendant] on these charges."  ECF Doc. 1 at 10.

However, *Sadler* is easily distinguished from the instant case.  In *Sadler*, after nolle prossing two counts, the State later filed a document styled "Withdrawal of Announcement of Nolle Prosequi," advising that "[a]n essential witness has been located by the State which warrants refiling of the case in Circuit Court."  No new charging information or indictment was filed, and, after the State "withdrew" its nolle prosequi, the Clerk of the Court simply sent Sadler a notice to appear for trial. After the jury was selected and sworn and without objection, the State only then filed an "amended information," charging the same offenses as were contained in the original information but changing the dates of the offenses.  *Sadler*, 949 So. 2d at 304.

The State in Biggs's case, however, did formally recharge him by Amended Information -- which included the two trafficking charges – well before his trial, on April 23, 2009.  ECF Doc. 15-1 at 107.  That Amended Information was again amended on July 8, 2009, the morning of trial, but that amendment was simply to change the date in Count 2 and Count 5.  Unlike in *Sadler*, at the time the jury was empaneled there was no "absence of an indictment or information formally charging" Biggs with Counts 6 and 7.

Simply put, there was no lack of trial court jurisdiction and no error for appellate counsel to challenge. Counsel cannot be deficient for raising a meritless claim; nor can such failure result in prejudice. *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (explaining that counsel cannot be deficient for failing to raise a meritless claim). Therefore, Biggs is not entitled to habeas relief on this ground.

### D.    Ground Six: IAAC for Failing to Raise Claim of Vindictive Prosecution

Biggs argues appellate counsel was ineffective for failing to raise a claim that his conviction on counts 6 and 7 violated the Fifth, Sixth and Fourteenth Amendments because it was the result of vindictive prosecution in that the prosecutor added the trafficking counts back in retaliation for Biggs rejecting the prosecutor's five-year plea offer. ECF Doc. 1 at 11. The Secretary admits Biggs exhausted this claim in his IAAC petition.

The undersigned finds a reasonable basis exists for the appellate court to reject this ground for relief. Biggs relies upon *United States v. Goodwin*, 457 U.S. 368 (1982), for the proposition that "to punish a person because he had done what the law plainly allows [go to trial rather than plea] is a due process violation 'of the most basic sort.'" ECF Doc. 1 at 12. *Goodwin*, however, clearly forecloses Biggs's claim

by expressly distinguishing the addition of more severe charges which result from failed plea negotiations.

The *Goodwin* Court noted that in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), "the Court held that the Due Process Clause of the Fourteenth Amendment did not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he as originally charged." *Bordenkircher*, 434 U.S. at 362. Specifically, the *Goodwin* Court stated:

> The outcome in *Bordenkircher* was mandated by this Court's acceptance of plea negotiation as a legitimate process. In declining to apply a presumption of vindictiveness, the Court recognized that "additional" charges obtained by a prosecutor could not necessarily be characterized as an impermissible "penalty." Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation—in often what is clearly a "benefit" to the defendant—changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Goodwin*, 457 U.S. at 377–80.

In Biggs's case, even if the prosecutor added back the more serious charges simply because of his refusal to plead guilty to the original charge, the *Goodwin* opinion makes clear such is allowable in the "give-and-take of plea negotiations." *See Goodwin*, 457 U.S. at 377-78; *see also Barritt v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1246, 1252 (11th Cir. 2020) ("the filing of additional charges in the context of plea negotiations is not necessarily a retaliatory penalty") (citing *Goodwin*, *supra*).

Also, these additional charges were based on events independent from the five other counts, *see Humphrey v. United States*, 888 F.2d 1546, 1549 (11th Cir. 1989) ("there is no presumption of vindictiveness when the new charges are based on independent conduct."), and each "additional charge was justified by the evidence," as shown by the jury's finding of guilt on them. *C.f., Goodwin*, 457 U.S. at 377.

The vindictive prosecution argument would have failed on appeal, and thus the First DCA had a reasonable basis for denying Biggs's IAAC claim. As stated above, counsel cannot be deficient for raising a meritless claim; nor can such failure result in prejudice. *See Owen v. Sec'y, Dep't of Corrs.*, 568 F.3d 894, 915 (11th Cir. 2009) (stating that failure to raise a meritless claim cannot constitute ineffective assistance). Therefore, Biggs is not entitled to federal habeas relief on this ground.

**E.    Ground Seven: Ineffective Assistance of Trial Counsel ("IATC") for Misadvising Petitioner to Reject a Favorable Plea Offer and Failing to Inform Petitioner of the Mandatory Sentence He Faced**

Biggs argues his trial counsel was ineffective by "misadvising him in two separate and distinct ways in causing him to reject two favorable plea offers." ECF Doc. 1 at 13. First, Biggs claims counsel advised him not to accept a two-year probationary sentence because he told Petitioner "the State had no case against him and that he would prevail if he went to trial." *Id.* Second, he claims counsel failed to inform the Petitioner of the statutory maximum sentence for trafficking he was facing if he went to trial and lost. If he had been correctly advised, he claims, he would have accepted a five-year plea offer which he asserts the prosecutor "tendered . . . the day he was going to trial." *Id.* at 14.

The Secretary admits Biggs exhausted this claim by raising it in his 3.850 motion as ground two therein, ECF Doc. 15 at 18, and argues the state court's factual determinations, including the credibility of witnesses, were reasonable and the court's conclusion that no ineffectiveness was involved was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). For the reasons which follow, the Court agrees.

The state circuit court denied this claim and provided a written explanation, ECF Doc. 15-5 at 222, and the First DCA affirmed in 1D16-1447 without written explanation.  ECF Doc. 15-7 at 179.  Therefore, this Court will "look through" the First DCA decision to the circuit court order which provides a relevant rationale and presume that the unexplained First DCA decision adopted the same reasoning.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

In denying relief on this ground, the state circuit court found "the State did make the Defendant an offer of 24 months' probation in August 2008.  It is also clear that the Defendant rejected this favorable plea offer.  The Defendant testified at the evidentiary hearing that he rejected the plea offer because he was afraid it would implicate his wife."  ECF Doc. 15-5 at 218-21.  Specifically, at the hearing, Defendant's counsel testified Biggs was "very adamant about going to trial on this matter.  Of course, he's the one that makes those decisions."  *Id*.  Counsel also had the Defendant sign a form acknowledging that he was rejecting the plea offer.  *Id.*

As to Biggs' second argument that trial counsel failed to advise him of the 25-year minimum mandatory he was facing on the trafficking charges, the stated court noted in its order that counsel testified "he would have told the Defendant there was a 25 year minimum mandatory as to those crimes. Mr. Sutherland further testified that he was 'sure' the Defendant understood that the trafficking charges had

minimum mandatory sentences." *Id.* at 219-20. The state court found counsel's testimony to be credible. *Id.* at 220.

In contrast, the state court found "Defendant's testimony that he was unaware of the minimum mandatory sentence he would receive if convicted of trafficking is simply not credible." *Id.* Namely, the state court pointed out the fact that Defendant's wife was facing the same trafficking changes, both had been on bond for a number of years prior to trial, and she knew she was facing a minimum 25 years.

The circuit court also found that "Defendant has not proven that he would have taken the State's plea offer but for counsel's performance." Instead, "[a]s Mr. Stokes testified, 'the Biggs were sticking together and neither one was going to plead unless the other one did because they were not willing to testify against the other one.'" *Id.* Also, "at the time the Defendant was making his decision to reject the plea offer of 24 months' probation, the trafficking charges had been nolle prossed," and, thus, since "Defendant was making a decision to reject the plea offer of 24 months, it seems unlikely that knowledge of minimum mandatory sentences as to charges that had been dropped would have much impact on the Defendant's decision." *Id.*

The state court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). The standard set forth in *Strickland* applies to ineffective assistance of counsel claims arising out of the plea process, including to the negotiation and consideration of pleas that are rejected or lapse. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). "Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). This obligation includes informing a client about formal plea offers presented by the government and correctly advise a client about such offers. Failure to do so is ineffective assistance of counsel. *See Missouri v. Frye*, 566 U.S. 134, 144-45 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

In the context of a rejected plea offer, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Osley*,

751 F.3d at 1222 (quoting *Lafler*, 566 U.S. at 164). However, "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz*, 930 F.2d at 835.

Here, the state court credited the testimony of defense counsel over Biggs and found that Biggs did not reject the 24-month probation offer because of counsel's advice. Instead, he was hesitant to implicate his wife and felt that he was innocent. Second, the state court credited the testimony of defense counsel that Petitioner was aware of the mandatory minimums at the time he rejected the five-year plea offer and so he rejected the offer because he believed he had a good case. Therefore, the court was not unreasonable in finding that Biggs had not met the first prong above – involving a showing that Biggs would have accepted the offer absent counsel's advice.

Importantly, a question of the credibility and demeanor of a witness is a question of fact. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing *Freund v. Butterworth*, 165 F.3d .939, 862 (11th Cir. 1999) (*en banc*)). Under Section 2254(e)(1), "[f]ederal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Jones v. Walker*, 540 F.3d 1277, 1288

n.5 (11th Cir. 2008) (*en banc*); *see also Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995).

"Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). This deference applies to a credibility determination that resolves conflicting testimony. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the applicant's testimony].")," *cert. denied*, 526 U.S. 1047 (1999).

Biggs has not provided clear and convincing evidence, indeed any evidence, the state court erred in finding the testimony of former defense counsel more credible than his own. In fact, the record is clear that, at the outset of trial, the prosecutor informed Biggs of the mandatory minimum sentence and gave him one last chance to accept the five-year offer. The prosecutor told the court, "I spoke with Mr. Parker and we did offer a five-year Department of Corrections with a three-year minimum

mandatory.  And so I just want to make sure the record is clear that that offer is revoked as soon as we start the trial."  ECF Doc. 15-1 at 271-72.  The court asked defense counsel, "All right.  Anything, Mr. Sutherland?"  Counsel responded, "I did discuss the offer with Mr. Biggs.  And he told me that he was not going to accept it."  *Id.* at 272.

Biggs is not entitled to federal habeas relief on this claim.

### F.    Ground Eight: IATC for Failing to Argue the Proper Legal Principle at Petitioner's Motion to Suppress Hearing

Biggs argues trial counsel was ineffective because counsel should have relied upon Florida Statute § 456.057(7)(a)(3) instead of § 465.17(3)(a) during the suppression hearing regarding his pharmacy records and comments by his doctor. ECF Doc. 1 at 15.  Had counsel argued the proper statute, he argues, the exception from § 893.07 would not have applied, and the evidence would have been suppressed. *Id.*  The Secretary admits Biggs exhausted this claim by raising it in his Second Amended Motion for Postconviction Relief, ECF Doc. 15 at 19, and the Court agrees.  *See* ECF Doc. 15-5 at 139 (Ground Three raising this issue in Petitioner's Second Amended Motion).  For the reasons which follow, the Court finds Biggs is not entitled to habeas relief on this claim.

The state circuit court denied relief on this claim and provided a written explanation, ECF Doc. 15-5 at 222. Since the First DCA affirmed without written explanation, ECF Doc. 15-7 at 179, this Court will "look through" the First DCA decision to the circuit court order which provides a relevant rationale and presume that the unexplained First DCA decision adopted the same reasoning. *See Wilson*, 138 S. Ct. at 1192.

In denying relief, the circuit court essentially found that it did not matter which statute the motion to suppress raised. First, "law enforcement did not receive any 'patient information' from Dr. Saith. Dr. Saith simply told law enforcement that as to certain controlled substances it her practice not to prescribe them. She also told law enforcement she had no record of her having written a specific prescription." ECF Doc. 15-5 at 222-23. "There was no testimony that Dr. Saith made any disclosures of information from the patient files." *Id.*

Second, the state court found that the evidence at trial "demonstrates that the prescriptions for controlled substances at issue were fraudulent. It is fundamental that in order to having standing to raise a Fourth Amendment claim, a defendant must have a reasonable expectation of privacy regarding the matters searched or seized. However, the Defendant in this case has no reasonable expectation of privacy as to fraudulent prescriptions." *Id.*

The circuit court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).  Although Biggs, in his petition and state motion, fails to identify which records he believed should be suppressed based on which statute, the state court was correct in finding that neither statute supports suppression of either the statements by Dr. Saith or Biggs's pharmacy records.

Section 456.057 prohibits doctors from providing medical records or disclosing a patient's medical condition to a third party "except upon written authorization of the patient" or in response to a subpoena or court order.  The state court was correct, however, in concluding Dr. Saith did not provide medical records to officers or discuss Biggs' medical condition with officers.  Instead, Dr. Saith denied having written a prescription for Biggs and told law enforcement it was not her practice to prescribe certain controlled substances to patients but instead to refer the patient to pain-management clinics.  Thus, even if trial counsel had raised § 456.07 as a basis to suppress the evidence, the argument would nonetheless have failed.  Therefore, Biggs cannot show he was prejudiced by counsel's arguments at the suppression hearing with regard to Dr. Saith's statements.

Also, if Biggs is attempting to apply § 456.057's prohibition to pharmacy records, such an argument is precluded by subsection (2) of the statute, which

specifically excludes those records maintained by pharmacists from falling under the statute's definition of a medical record.  Instead, pharmacy records are covered by the "authority to inspect" provision of the Pharmacy chapter of the Florida Statutes, § 465.017(2)(a), which permits the records to be inspected and copied "by law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances."  Fla. Stat. § 893.07(4)(b) (effective 1997-2011).  Biggs is not entitled to habeas relief on this ground.

### G.    Ground Nine: IATC for Failing to Request an Affirmative Defense Instruction Relating to a Valid Prescription

Biggs argues trial counsel was ineffective for failing to request a "prescription defense" jury instruction based on Florida Statute § 893.13(6).  The Secretary admits Petitioner exhausted this claim by raising it in his Second Amended Motion for Postconviction Relief, ECF Doc. 15 at 19, and the Court agrees.  *See* ECF Doc. 15-5 at 139 (Ground Five raising this issue in Petitioner's Second Amended Motion).

The state circuit court denied this claim with a written explanation, ECF Doc. 15-5 at 223, and the First DCA affirmed without written explanation.  ECF Doc. 15-7 at 179.  Therefore, this Court will "look through" the First DCA decision to the circuit court order which provides a relevant rationale and presume that the

unexplained First DCA decision adopted the same reasoning. *See Wilson*, 138 S. Ct. at 1192.

In denying relief, the circuit court relied on *Day v. State*, 119 So. 3d 485 (Fla 1st DCA 2013), a case in which the First DCA held that the trial court did not commit fundamental error in failing to instruct the jury on the prescription defense. The First DCA in *Day* explained that "the evidence of a valid prescription for the 33 pills in question was weak at best and does not present a compelling demand for applying the fundamental error doctrine." *Day*, 119 So. 3d at 490. In applying *Day* to the facts before it, the circuit court stated, "In this case, the defense is less than 'weak' because the jury in this case convicted the Defendant of obtaining controlled substances by fraud or fraudulent prescriptions beyond a reasonable doubt." ECF Doc. 15-5 at 223-24. Thus, "there is no reasonable possibility the Defendant's trial would have resulted in a different outcome had counsel requested a jury instruction on the prescription defense." *Id.*

The circuit court's conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). Biggs testified at trial he thought he had a valid prescription. ECF Doc. 15-2 at 91-93 ("Q. So all the times that you went to the pharmacy to pick up this medication, as far as you were concerned you thought

it was all authorized by the doctor's office?  A.  Yes, As far as I was concerned.  Q. And you were following instructions?  A. Within the law.").  Nonetheless, the jury found him guilty of Counts 1 through 5, even after being instructed one of the elements the State needed to prove was that Biggs acquired or obtained the substance "by misrepresentation; fraud; forgery; deception; or subterfuge."  ECF Doc. 15-2 at 258.  Thus, despite the lack of an explicit valid prescription instruction, the jury was required to address the argument that he did not know the prescriptions were invalid, and the jury's decision reveals that they rejected that argument.  Thus, Petitioner cannot show he was prejudiced by any lack of a valid prescription instruction.

## H.    Ground Ten: IAAC for Failing to Raise Claim of Fundamental Error Based on "Principle" Jury Instruction

Biggs argues appellate counsel was ineffective for failing to argue the circuit court committed fundamental error by allowing the prosecutor to rely upon the "principle" theory without giving "complete jury instructions on possession based on the application of the principle instruction."  ECF Doc. 1 at 18.  The Secretary argues Biggs is barred from raising this claim because it was denied by the First DCA based on an adequate and independent state procedural rule.  ECF Doc. 15 at 20.  This Court agrees.

A claim is considered procedurally defaulted if it was presented to the state court and rejected on an independent and adequate state procedural bar. *See Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001). In such a case, the federal court must first determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). If so, the federal court must determine whether the state's procedural default ruling rested on an adequate state ground independent of the federal question. *See Harris v. Reed*, 489 U.S. 255 (1989).

The Eleventh Circuit has a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on a state procedural rule to resolve the federal claim. *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd*,

250 F.3d at 1313, or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

Biggs raised this ground for relief for the first time in a petition filed directly with the First DCA on February 21, 2018 (docketed February 27, 2018) and entitled "Second and Successive Petition for Writ of Habeas Corpus." ECF Doc. 15-4 at 247; Case No.: 1D18-0837. The First DCA construed the petition as one alleging ineffective assistance of appellate counsel and dismissed it as untimely, citing Fla. R. App. P. 9.141(d)(5). *Biggs v. State*, 241 So. 3d 242 (Fla. 1st DCA 2018); ECF Doc 15-5 at 15.

Under Fla. R. App. P. 9.141(d)(5), "A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel. In no case shall a petition alleging ineffective assistance of appellate counsel on direct review be filed more than 4 years after the judgment and sentence become final on direct review." Fla. R. App. P. 9.141(d)(5).

As noted above, the judgment and sentence became final on direct review on December 6, 2012. *See, supra,* Sec. I.B. Therefore, the February 21, 2018 petition was properly rejected by the First DCA as untimely under Florida Appellate Rule

9.141(d)(5), and Biggs cannot return to state court to remedy the procedural defect. Also, the decision of the First DCA met the first and second elements of *Judd* because the court specified it was dismissing the action (rather than deciding it on the merits) and was doing so based on a state procedural rule. Thus, no issue of federal law interpretation was intertwined with its reasoning. Finally, the third *Judd* element is clearly met here, as the Eleventh Circuit instructs that "Fla. R. App. P. 9.141(d)(5) is an independent and adequate state procedural ground that is firmly established and regularly followed." *Rogers v. Sec'y, Dep't of Corr.*, 829 F. App'x 437, 444 (11th Cir. 2020).

Accordingly, Biggs is not entitled to federal habeas review of this ground.

## III. CONCLUSION

### A. Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration,

the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.     The clerk shall docket, as exhibits to this Report and Recommendation, the state court docket in Santa Rosa County circuit court case number 2006-CF-1725 and the online list of First DCA cases involving Bobby Biggs.

Additionally, it is respectfully RECOMMENDED:

1.     That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Biggs*, 2006-CF-1725, in the First Judicial Circuit, in and for Santa Rosa County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.     That the clerk be directed to close the file.

Done at Pensacola, Florida, this 10th day of March, 2021.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only

and does not control.  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.